FILED
2013 Jun-14  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | **2:10-cv-02689-JEO** |
| COMPASS GROUP, INC., and | ) | |
| MORRISON MANAGEMENT | ) | |
| SPECIALISTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This case is before the court on the Motion for Summary Judgment filed by Compass Group, Inc. ("Compass") and Morrison Management Specialists, Inc. ("Morrison") (collectivley "defendants") and their evidence and memorandum in support thereof.  (Docs. 18-20).[1]  Plaintiff, Robert Collins ("plaintiff" or "Collins"), has filed a response in opposition to defendants' motion and defendants have filed a reply brief.  (Docs. 23 & 24).  Upon consideration of the record and the arguments of counsel, the undersigned hereby recommends that the motion for summary judgment be granted in part and denied in part.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff alleges Compass and Morrison discriminated against him premised on his age and disability and that they interfered with his right to intermittent leave under the Family and Medical Leave Act ("FMLA").  (Doc. 1).  He specifically alleges violations of the Age

---

[1] References herein to "Doc. ___" are to the electronic numbers assigned by the Clerk of the Court. References to page numbers are also to the electronic page numbers found at the top of the document.  References to the depositions are to the page numbers on the original document, not the electronic numbers.

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Alabama

Age Discrimination in Employment Act ("AADEA"), ALABAMA CODE § 25-21-20, *et seq.*, and

the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended by

the ADA Amendments Act of 2008 ("ADAAA"), and the Family Medical Leave Act ("FMLA"),

29 U.S.C. § 2601, *et seq.* (*Id.*) Defendants move for summary judgment on all claims. (Doc.

18).

> **B.** **Factual History[2]**

>> **1.** **Plaintiff's Basic Employment History with Defendants**

Plaintiff worked for Morrison, a subsidiary of Compass, from September 2007 until July

28, 2010, as a dishwasher.[3] (Doc. 19-1 at 10, 14, 19-21, 28; Doc. 20 at ¶ 1). He was assigned to

retrieve dishes and trays from patient floors and then scrape, wash, and store them. (Doc. 19-1 at

21).

>> **2.** **Plaintiff's Dialysis and First Request for Accommodation**

Plaintiff suffered from kidney failure and required dialysis treatment three days per week

– Tuesday, Thursday, and Saturday. (*Id.* at 28). He was scheduled to work from 6 a.m. until 2

p.m. to accommodate his dialysis. (*Id.* at 39). However, Collins had difficulty working full time

due to the weakness he experienced from dialysis, and, in March 2009, he asked Executive Chef

Blake Wilbanks if he could change his schedule from full time to part time, only working

---

[2] The facts are presented in the light most favorable to the plaintiff. These facts are for summary judgment purposes only and may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994); *Underwood v. Life Ins. Co. of Ga.*, 14 F. Supp. 2d 1266, 1267, n.1 (N.D. Ala. 1998).

[3] While this is the termination date that plaintiff testified to in his deposition, he listed July 30, 2010, in his second EEOC charge, (doc. 19-2 at 8) and he also has reported his termination date as June 28, 2010 (doc. 23 at 5 of 34) and July 29, 2010 (*id.* at 13 of 34, ¶ 37; doc. 1 at ¶ 30).

Mondays, Wednesdays, and Fridays.  (*Id.* at 26-7; Doc. 23-4 at 3).  Wilbanks told Collins that he "would do it for him, because [he] wanted to try to work with his [plaintiff's] situation," but he also said that he did not have to adjust an employee's schedule.  (Doc. 19-5 at 43).  Although he was not in charge of adjusting plaintiff's status to part time, he did arrange for plaintiff to be off on Tuesdays and Thursdays and to work as few Saturdays as possible.  (*Id.* at 43-44).

### 3.    Sous Chef Davis's Ageist Comments Toward Plaintiff

Cornelius Davis was the sous chef at St. Vincent's East while plaintiff worked there as a dishwasher.  (Doc. 19-4 at 6, 9).  Plaintiff testified that Davis would call him "old man," tell him "to go somewhere and sit down," and tell him that he was as old as Davis's grandfather.  (Doc. 19-1 at 50).  According to plaintiff, Davis also said that "he didn't want the old guy working around there," and that "he was going to get rid of [plaintiff]."  (*Id.* at 52-53, 55-56).  Additionally, plaintiff testified that Davis said, "old guy go on in the back and do your work." (*Id.* at 55).  These comments are corroborated by former employee Tryone Ball who also stated that he heard Davis "talk about how he was going to get rid of ... Collins," referring to him as an "'old man' who he needed to get rid of."  (Doc. 23-1 at 2, ¶ 2).

Plaintiff testified that he complained three times about Davis's ageist comments toward him.[4]  (Doc. 19-1 at 49-50).  The first complaint was to the director, known to plaintiff as "Mr. Richard."[5]  (*Id.* at 49).  The other two complaints were made to Director of Food Services Greg Richmond (doc. 19-7 at 10), once in September 2009 and another time "just before" he was fired

---

[4] Blake Wilbanks's deposition provides that plaintiff came to him complaining about disagreements with Davis.  (Doc. 19-5 at 48 ).

[5] Plaintiff did not know "Mr. Richard's" last name.  (Doc. 19-1 at 49).  Also, the date of his first complaint is unclear.  However, plaintiff testified that he complained of age discrimination "[a]s soon as [he] got to work," and that it would have been "2008, 2009."  (*Id.* at 48).

at the end of July 2010.  (Doc. 19-1 at 50-51)  Following plaintiff's complaints in 2009, Wilbanks spoke with Richmond and informed him "that he had spoken with Cornelius [Davis] and Robert [Collins] and that things were okay."  (Doc. 19-7 at 68).

### 4.    Plaintiff's Disciplinary Write-Ups

Plaintiff's employment file consists of multiple associate counseling reports ("write-ups" or "ACRs"), including the following:

(1)  January 17, 2008, for failing to clock out on breaks[6] (doc. 19-11 at 33 of 40),

(2)  December 9, 2008, for having eighteen tardies and two call-ins in a twelve-month period[7] (*id.* at 34),

(3)  August 11, 2009,[8] for failing to clean the dishwasher and leaving it dirty[9] (*id.* at 35),

(4)  August 21, 2009, for failing to clean dishes and utensils for the tray line[10] (*id.* at 36),

(5)  October 9, 2009, for having a 32-ounce Coca-Cola drink on his station[11] (*id.*

---

[6] While the counseling report appears to be dated January 17, 2008, at the top of the document, it could also be read as November 7, 2008, because that is the date the supervisor signed it.  It was labeled as a first progressive offense.  It is unclear from the signature who issued this write-up.  (Doc. 19-11 at 33 of 40).

[7] This write-up was issued by Blake Wilbanks.

[8] This counseling report is dated August 11, 2009, but signed August 21, 2009.

[9] Douglas Riddle (at the time, a retail manager (doc. 19-6 at 10)) signed the write-up with Cornelius Davis and Mary Brooks (a supervisor (doc. 19-3 at 8)) as witnesses.  It is labeled as a first progressive discipline.  (Doc. 19-11 at 35 of 40).

[10] Douglas Riddle signed this second progressive disciplinary write-up, and Davis and Brooks were witnesses.  (Doc. 19-11 at 36 of 40).

[11] This write-up was issued by Blake Wilbanks.  He marked on this counseling report that this was plaintiff's final counseling and noted that plaintiff's "[n]ext write up will be termination."  (Doc. 19-11 at 37 of 40).

at 37),

(6)  December 21, 2009, for failing to ask permission to go on break, and for

taking a 38-minute break instead of the assigned 15-minute break[12] (*id.* at 38), and

(7)  December 21, 2009, for telling another supervisor, Michael Benson, that he

was not his supervisor when Benson asked him a question[13] (*id.* at 39).

Of these seven write-ups, plaintiff signed only the December 9, 2008 write-up and asserts that

while the other six are marked that he refused to sign, he was not presented with these write-ups.

Regarding his alleged refusal to sign six of the write-ups, plaintiff asserts that he did not receive

them (*see* doc. 19-1 at 66-81) and that he "ain't never refused to sign nothing [sic]" (*id.* at 81).

### 5.    Plaintiff's First EEOC Charge

On September 23, 2009, plaintiff filed his first charge with the Equal Employment

Opportunity Commission ("EEOC"), alleging retaliation, age discrimination, and disability

discrimination.[14]  (Doc. 19-2 at 1 of 78).  In his charge, he complained of Davis's ageist

comments, and he also wrote that, following his complaints regarding Davis's comments, he had

"received written warnings on a continuing basis for misconducts that [he] did not commit or

others have committed."[15]  (*Id.*)  The EEOC sent notice of the charge of discrimination to

_____

Douglas Riddle was the witness to this write-up.  (*Id*.)

[12]  Blake Wilbanks issued this write-up, marking that this was plaintiff's first progressive discipline for this
conduct.  (*Id*. at 38).  Riddle was the witness to this write-up.  (*Id*.)

[13]  This verbal warning was given by Blake Wilbanks and witnessed by Riddle.  (*Id*. at 39).

[14]  Plaintiff was 60 years of age when he filed this EEOC charge.  (Doc. 19-2 at 1 of 78).

[15]  Plaintiff testified in his deposition that "[w]hen they [supervisors who wrote plaintiff up] found out they
had the suit on them, then that's when they start writing up phony documents."  (Doc. 19-1 at 70).  However, he later
testified that he did not remember if the reprimands were done because of his EEOC charge, saying that "[he] never

Morrison's senior vice president, located in Atlanta, Georgia, on September 31, 2009.  (Doc. 19-12 at 3 of 38).  On July 8, 2010, the EEOC notified both Collins and an attorney for Compass in Atlanta, Georgia, that it had completed its investigation into Collins's allegations and determined that it was "unable to conclude that the information obtained establishes violations of the statutes."  (*Id.* at 6).

### 6.    Plaintiff's Second Request for a Reasonable Accommodation

Wilbanks, who originally accommodated plaintiff's scheduling, changed jobs within the company and no longer worked at St. Vincent's East as of July 2010.  (Doc. 19-5 at 8).  Following his departure, Davis did the scheduling for a short time.  (Doc. 19-1 at 30; 19-7 at 80).  Plaintiff asked Davis if he could work Mondays, Wednesdays, and Fridays to accommodate his dialysis schedule, and, according to plaintiff, Davis responded by saying, "'well, I can replace you – you can have it off permanent, I can replace you with a younger guy.'"  (Doc. 19-1 at 97-98).  Plaintiff also alleges that Davis said, "they wasn't [sic] going to have no [sic] part-time working [sic]."  (*Id.* at 27).

### 7.    Plaintiff's Termination and Second EEOC Charge

Plaintiff was terminated on July 30, 2010, according to his final progressive counseling form, after he allegedly "left dirty dishes, dirty trash and trays from retail, trash on the floor, and left the dishmachine dirty, [which were] unacceptable closing procedures."  (Doc. 19-12 at 7 of 38).  Greg Richmond testified that,

---

seen [sic] them, so [he does not] know how – when they were made up."  (*Id.* at 71).  He further explains that "they could have went [sic] and got, just made them dates up and put it on there [sic]."  (*Id.* at 75).  When asked if plaintiff believed that the write-ups were made after his EEOC charge and the supervisors "signed it [sic] saying that [plaintiff] refused to sign the two [August 21, 2009 and September 23, 2009 write-ups]," plaintiff answered yes, that he believed that was true "because they never come to [plaintiff] with it [the write-ups] [sic]."  (*Id.* at 75-76).

> Cornelius [Davis] came to me and told me that things were left dirty the night before, and I went to look at the dish room area and saw that the machine was still dirty.  And, you know, some of the stuff had already been cleaned up.  I mean, like trash and retail, that stuff they had cleaned up already.  But the stuff that I saw, I came back to the office and asked for his file, and I looked at the write-ups that we had on him, and I determined that we would terminate him.

(Doc. 19-7 at 136).  Richmond spoke to Davis after he had looked at plaintiff's file and "told Cornelius to say that I wanted to bring him in my office and Cornelius asked me if I was going to terminate him, so he would know what to do as far as, you know, covering shift, and I told him yes, and that's what happened."  (*Id.* at 137).

On August 2, 2010, plaintiff filed a second EEOC charge, stating that he believed that he was discriminated against because of his race, age, disability, and also in retaliation for filing his first EEOC charge.  (Doc. 19-2 at 8 of 78).  Regarding his termination, he alleged that "Greg Richards [sic], White Manager, told me that I was being discharged for poor job performance, which I deny."[16]  (*Id.*)  Defendants communicated with the EEOC regarding plaintiff's second charge, stating in a letter that "the allegations contained in the [second] Charge of Discrimination are the same as the allegations in a prior Charge of Discrimination filed by Mr. Collins ... and in the federal court lawsuit."  (Doc. 23-3 at 2; *see also* doc. 19-12 at 10-13).  Plaintiff spoke with an EEOC investigator, and it was later determined on August 7, 2011, that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes."  (Doc. 19-2 at 13).

## II.   STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

---

[16] While the decisionmaker regarding plaintiff's termination is Greg Richmond, plaintiff incorrectly refers to him here as Greg Richards.  (Doc. 19-2 at 8).

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam ) (citation to former rule omitted); FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[17]   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997)

---

[17]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." FED. R. CIV. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

(quoting *Anderson*, 477 U.S. at 259).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249; *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  *Cottle v. Storer Communication, Inc*., 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254).  Nevertheless, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.  *Anderson*, 477 U.S. at 255.  The nonmovant need not be given the benefit of every inference, but only of every reasonable inference.  *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Allen*, 121 F. 3d at 643.

## III.   DISCUSSION

### A.   State Claims Under the AADEA (Counts Two (Termination)  and Four (Retaliation))

Defendants initially argue that plaintiff cannot pursue claims under both the AADEA and the ADEA.[18]  (Doc. 20 at 11 of 30 (citing ALA. CODE § 25-1-20, *et seq* (1975))).  Plaintiff replies that Alabama law does not preclude the simultaneous pursuit of such claims in a single forum.  (Doc. 23 at 14 of 34 (citing *Wallace v. Jim Walter Homes, Inc.*, 68 F. Supp. 2d 1303 (M.D. Ala.

---

[18] Count One asserts an ADEA "Discrimination" claim, Count Two asserts an AADEA "Discrimination" claim, Count Three asserts an ADEA "Retaliation" claim, and Count Four asserts an AADEA "Retaliation" claim. (Doc. 1 at 7-10 of 16).

1999)).

The AADEA permits plaintiffs to elect whether "'to pursue their remedies under Title VII ... and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *or in the alternative* bring a civil action in the circuit court of the county in which the person was or is employed.'" ALA. CODE § 25-1-29 (1975) (Italics added).[19]  In *Henry v. Jefferson Cnty. Personnel Bd.*, 519 F. Supp. 2d 1171, 1185 (N.D. Ala. 2007), aff'd, 252 Fed. Appx. 308 (11th Cir. 2007), United States District Court Judge C. Lynwood Smith, Jr., held that the "[p]laintiff [could] not pursue both of her claims under the Alabama Age Act [AADEA] and the ADEA" in a situation similar to the present one.  He further stated that the AADEA "plainly states that it is a statute of alternative, not duplicative, relief" and that the Act "clearly entitles a plaintiff to only 'one recovery of damages.'"  *Id.* (citing ALA. CODE § 25-1-29 (1975)).  Thus, Judge Smith concluded that the AADEA "forces a plaintiff" to chose to file suit either under the ADEA or the AADEA.  *Id.*

In *Wallace*, United States District Court Judge Myron H. Thompson, reached a contrary

---

[19] Section 25-1-29, in its entirety, provides:

Any person aggrieved may elect to pursue their remedies under Title VII of the Civil Rights Act of 1964 as amended, and the Age Discrimination in Employment Act 29 U.S.C. Section 621 or in the alternative bring a civil action in the circuit court of the county in which the person was or is employed for such legal or equitable relief as will effectuate the purposes of this article.  However, if an action is brought in the federal court, any action pending in the state court shall be simultaneously dismissed with prejudice.  Further, any party bringing action under this section shall only be entitled to one recovery of damages.  Any damages assessed in one court will offset any entitlement to damages in any other state or federal court.  In any action, a person shall be entitled to a trial by jury of any issue of fact in any action for recovery of amounts owed as a result of a violation of this article, regardless of whether equitable relief is sought by any party in the action.  Any employment practice authorized by the federal Age Discrimination in Employment Act shall also be authorized by this article and the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article.

ALA. CODE § 25-1-29 (1975).

conclusion stating:

> The Alabama statute disputed here does indeed mandate that "if an action is brought in the federal court, any action pending in the state court shall be simultaneously dismissed with prejudice." 1975 ALA. CODE § 25–1–29.[ ] Jim Walter apparently reads the statute broadly to make simultaneous pursuit of federal and state claims in the same court impossible, but the language of the statute is not that broad and instead specifically limits its scope to mandate dismissal of "any action pending in the state court" if any equivalent action is pursued "in the federal court." *Id.* (emphasis added). By specifically mentioning the courts themselves, the statute expresses an intent to avoid redundant adjudications of the same dispute in two separate fora. The dismissal provision thus operates to conserve the judicial resources of Alabama state courts, not to make claims unavailable for simultaneous pursuit in a single forum.

*Id.*, 68 F. Supp. 2d at 1304 (footnote omitted).

Because plaintiff has filed under both the ADEA and the AADEA, the court finds the claim under the AADEA "duplicative." *Henry*, 519 F. Supp. 2d at 1185. In so finding, the undersigned finds the reasoning of Judge Smith more persuasive. Consequently, summary judgment is appropriate as to plaintiff's claims under the AADEA in Counts Two and Four.

**B.    The ADEA and ADA Discharge Claims (Count One (ADEA Termination), Count Three (ADEA Retaliation), Count Five (ADA Accommodation and Termination), and Count Six (ADA Retaliation)) and Defendants' Exhaustion Challenge**

Plaintiff filed his first EEOC Charge of Discrimination alleging age and disability discrimination on September 23, 2009. (Doc. 19-2 at 1 of 78). That charge was dismissed on July 8, 2010. (*Id.* at 7 of 78). Plaintiff filed a second EEOC Charge on August 2, 2010. (*Id.* at 8 of 78). This action was filed on October 4, 2009. (Doc. 1). That charge was dismissed on June 7, 2011. (*Id.* at 13 of 78).

Defendants argue that plaintiff's ADEA and ADA *discharge* claims are due to be dismissed because he failed to add these claims in an amended complaint in this case within 90

11

days of the receipt of the second EEOC determination.  (Doc. 20 at 12-15 of 30).  Plaintiff, however, argues that he need not exhaust his remedies because the allegations in the unexhausted charges "can be said to have grown out of the allegations of a charge for which he received the right to sue."  (Doc. 23 at 15 of 34 (citing *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)).  Additionally, plaintiff argues that "any failure to exhaust administrative remedies has been cured by Plaintiff's receipt of a right to sue letter on his second Charge of Discrimination, which was issued on June 7, 2011."  (*Id.* at 18 of 34).  Plaintiff premises this assertion on the principle of equitable modification.  (*Id.* (citing *Forehand v. Florida State Hospital*, 89 F.3d 1562, 1568 (11th Cir. 1996) (citing *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1219 (5th Cir. Unit B 1982)).

Typically, an employee must timely pursue and exhaust administrative remedies as a precondition to filing a discrimination suit under the ADEA and the ADA.  29 U.S.C. § 626(d); 42 U.S.C. § 12117(a).  *See Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) ("[u]nder the ADEA, 'a civil action may be brought ... within 90 days after the date of the receipt of ... notice [of dismissal of the charge]'"); *Hamilton v. Rhee*, 770 F. Supp. 2d 241, 244 (D.D.C. 2011) ("Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies...").  The EEOC "should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."  *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983).  "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [the Eleventh Circuit] has cautioned that allegations of new acts of discrimination are inappropriate."  *Gregory v. Georgia*

12

*Dep't of Human Resources*, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).  Additionally, a plaintiff's judicial complaint is limited by the scope of the EEOC investigation that can "reasonably be expected to grow out of the charge of discrimination."  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).[20] Courts, however, should be "extremely reluctant to allow procedural technicalities to bar claims brought under the Act."  *Id.* at 461.  Also, "'the scope of an EEOC complaint should not be strictly interpreted.'" *Id.* at 465 (quoting *Baxter v. Savannah Sugar Refining Corp.*, 46 F.R.D. 56, 59 (S.D. Ga. 1968)).

While defendants argue that plaintiff's second EEOC charge consists of "allegations of new acts of discrimination" (doc. 20 at 13 of 30), which would be inappropriate in this action, plaintiff's second charge did in fact grow out of his first EEOC charge.  This was noted by the defendants in their letter to the EEOC concerning the second charge when they stated that "the allegations contained in the [Second] Charge of Discrimination are the same as the allegations in a prior Charge of Discrimination filed by Mr. Collins."  (Doc. 19-12 at 10-13).  The Supreme Court has long held:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

In this instance, both charges relate to defendants' alleged discriminatory and retaliatory

---

[20] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

treatment of plaintiff.  The second charge, which he filed as a result of being terminated, grew out of the discrimination alleged in the first charge.  Consequently, there is no procedural bar to bringing in this action the claims raised in the second EEOC charge.  *See Basel v. Secretary of Defense*, 2013 WL 490783, *2 (11th Cir. February 13, 2013) ("Where a retaliation claim grows out of an administrative charge that the plaintiff properly presented to the court, the district court has ancillary jurisdiction over the claim....  A district court, however, may not consider a retaliation claim that was not first administratively exhausted where no other properly raised judicial claim exists to which the retaliation claim may attach....") (citations omitted)).  While plaintiff did not amend his complaint to add his second charge's notice of right to sue, he has provided the court with a copy of the letter, which has been entered into the record.  (Doc. 19-2 at 13).  Under the circumstances, the court finds that the claims advanced in the second charge are not precluded.  This aspect of the motion for summary judgment is due to be denied.[21]

### C.   Failure to Establish a Prima Facie Case of Disparate Treatment (Counts One and Five) or Retaliation (Counts Three and Six) Under the ADEA or ADA

#### 1.   Disparate Treatment Claims

The defendants initially argue that Collins cannot establish a prima facie case of disparate treatment under the ADEA or the ADA.  (Doc. 20 at 16 of 30).  Specifically, they assert that Collins cannot show a viable comparator or "that age was the 'but-for' cause of the adverse employment decision."  (*Id*. at 18-19).

The ADEA prohibits an employer from discharging, or otherwise discriminating against,

---

[21] Additionally, defendants argue that since plaintiff's ADEA claim is limited to the scope of his first EEOC charge, which does not make a claim for lost wages, no relief can be granted.  (Doc. 20 at 15 of 30).  In view of the court's finding that the present ADEA claims include the second EEOC charge, this aspect of the motion is due to be denied.

an employee because of his age if he is at least 40 years of age.  29 U.S.C. § 623(a)(1).  A plaintiff may establish a prima facie case of age discrimination by (1) providing direct evidence of discriminatory intent by the defendant, (2) presenting statistical proof of a pattern of discrimination by the defendant, or (3) providing other circumstantial evidence.  *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998); *Standifer v. Sonic-Wilson Motors L.L.C.*, 401 F. Supp. 2d 1205, 1215 (N.D. Ala. 2005).  Thus, the initial question is whether that burden has been met.

a.       **Direct Evidence**

Plaintiff retorts the defendants' arguments asserting that he has produced direct evidence of age discrimination through comments made by Sous Chef Davis.  Accordingly, he concludes that defendants are not entitled to summary judgment.  (Doc. 23 at 21-22 of 34).  Specifically, plaintiff asserts that Davis said, "well, I can replace you – you can have it off permanent, I can replace you with a younger guy," (doc. 19-1 at 97-98) and said, "old guy go on in the back and do your work," (*id.* at 55) and frequently told plaintiff "to go somewhere and sit down," (*id.* at 50) calling plaintiff "as old as [his] grandfather."  (*Id.*)  The defendants respond that Davis's purported comments are not determinative because Richmond, not Davis, was the decisionmaker.  (Doc. 24 at 9 of 11).

The Eleventh Circuit Court of Appeals has defined "direct evidence of discrimination as evidence that reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Van Voorhis v. Hillsborough County Bd. Of County Com'rs.*, 512 F.3d 1296, 1300 (11th Cir. 2008) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d

15

1354, 1358 (11th Cir. 1999)) (internal quotation marks omitted)).  It consists of evidence that, if

believed, would prove the existence of a fact without inference.  *Castle v. Sangamo Weston, Inc.*,

837 F.2d 1550, 1558 (11th Cir. 1988).  *See also Standifer*, 401 F. Supp. 2d at 1215 (quoting

*Burns v. Gadsden State Community College*, 908 F.2d 1512, 1518 (11th Cir. 1990).  "[O]nly the

most blatant remarks, whose intent could be nothing other than to discriminate on the basis of

age [] constitute direct evidence."  *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

*See also Rojas v. Florida*, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002).  "[D]irect evidence does not

include 'stray remarks in the workplace' or 'statements by nondecisionmakers' or 'statements by

decisionmakers unrelated to the decisional process itself.'"  *Standifer*, 401 F. Supp. 2d at 1215

(quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989)).[22]

A decisionmaker is a person with the authority to fire employees, not a co-employee.  *See*

*Stephenson v. National Alliance Sec. Agency, Inc.*, No. 2:10-cv-0881-AKK, 2012 WL 1340073

at *6 (N.D. Ala. April 16, 2012) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1329

(11th Cir. 1998) and *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997)).

Sous Chef Davis's comments do not constitute direct evidence of discrimination in this

case because he was not the decisionmaker.  He did not have the authority to fire employees, he

could only provide oral discipline and verbal counseling to employees.  (Doc. 19-4 at 24; doc.

---

[22] The Eleventh Circuit has held that stray remarks made by nondecisionmakers are not direct evidence of discrimination.  *See Castle*, 837 F.2d at 1553 & 58 (finding references by supervisors to employees as "old farts," "old bastards," and "old cows" and his calls for "new blood" and that "everyone over 35 should be sacked" was "circumstantial" evidence); *Roberts v. Design & Mfg. Servs. Inc.*, 167 Fed. App'x. 82, 85 (11th Cir. 2006) (finding no direct evidence of age discrimination, because supervisor "never stated that he was going to fire [the plaintiff] because he was too old"); *Dixon v. The Hallmark Companies*, 627 F.3d 849, 855 (11th Cir. 2010) (applying the *Castle* rule for direct evidence, finding that direct evidence can be shown through "a scrap of paper saying 'Fire Rollins—she is too old'"); *Van Voorhis v. Hillsborough Cnty. Bd. Of Cnty. Com'rs.*, 512 F.3d 1296, 1300 (11th Cir. 2008) (finding that the statement of a decisionmaker, a manager in charge of hiring, that he "didn't want to hire any old pilots," qualified as direct evidence).

19-7 at 14).

Plaintiff argues that Davis's statements can prove a discriminatory animus under the "cat's paw" theory.  (Doc. 23 at 23, n.5 (citing *Staub v. Proctor Hosp.*, --- U.S. ---, 131 S. Ct. 1186, 1194 (2011))).  *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (causation may be established under the "cat's paw" theory in Title VII case).  In order to use this theory, however, a plaintiff must show "that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee."  *Id.*

In *Staub*, the Supreme Court held that an employer could be liable under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") only if the subordinate supervisor (1) performs an act motivated by antimilitary animus that is intended to cause an adverse employment action, and (2) that act is a proximate cause of the ultimate employment action.  *Id.*, 131 S. Ct. at 1194.  The Eleventh Circuit Court of Appeals recently discussed the applicability of *Staub* in an ADEA case.  *Sims v. MVM, Inc.*, 704 F.3d 1327, 1337 (11th Cir. 2013).  The *Sims* court held that *Staub's* "proximate causation" standard does not apply to cat's paw cases involving age discrimination.[23]  *Id.* at 1336-37.  The *Sims* court further

---

[23] The court stated:

> Sims urges us to apply [the *Staub*] analysis to this case.  But the text of the USERRA and the ADEA differ in important respects.  The USERRA (and Title VII)[ ] requires that a plaintiff demonstrate discrimination by showing that the proscribed bias was a "motivating factor" in the adverse decision.  38 U.S.C. § 4311(c) (USERRA); 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)(B) (Title VII).  As the Court in *Staub* emphasized, this "motivating factor" causation standard is simply the traditional tort law standard of proximate cause, requiring only "some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those link[s] that are too remote, purely contingent, or indirect."  131 S. Ct. at 1192 (internal quotation marks omitted).  By contrast, the ADEA states that it is unlawful if an employee suffers adverse employment action "because of such individual's age."  29 U.S.C. § 623(a)(1) (emphasis added).  Thus, "to establish a disparate-treatment claim under the plain language of the ADEA, ... a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Gross*, 557 U.S. at 176, 129 S. Ct. at 2350.  As noted above, a "but-for" cause requires a closer link than mere

declined to address the issue of whether *Staub's* agency principles apply to scienter because the

plaintiff could not prevail on the motion due to the ADEA's "but-for" requirement.[24]  *Id*. at 7.

_____

> proximate causation; it requires that the proscribed animus have a determinative influence on the employer's adverse decision.  *Id.*
>
>         As the Supreme Court cautions, "we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'"  *Id*. at 174, 129 S. Ct. at 2349 (quoting *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 393, 128 S. Ct. 1147, 1153, 170 L. Ed. 2d 10 (2008)).  And the ADEA requires more than what must ordinarily be proven under an analogous Title VII or USERRA action.[ ]  *See Simmons v. Sykes Enters., Inc*., 647 F.3d 943, 949-50 (10th Cir. 2011) ("If we were to apply *Staub* directly to an age-discrimination case, the plaintiff would then only need to prove her supervisor's animus was somehow related to the termination and not that the animus was necessary to bring about the termination.").  Because the ADEA requires a "but-for" link between the discriminatory animus and the adverse employment action as opposed to showing that the animus was a "motivating factor" in the adverse employment decision, we hold that *Staub's* "proximate causation" standard does not apply to cat's paw cases involving age discrimination.  In so holding, we follow the same holding by the Tenth Circuit in *Simmons*, 647 F.3d at 949–50.
>
>         However, *Staub* is primarily a case about agency principles and vicarious liability, and nothing in *Gross* is inconsistent with the application of agency principles to cat's paw claims under the ADEA.  All relevant case law, including our own prior case law applying the cat's paw theory in ADEA cases and the Court's decision in *Staub*, suggests that it is appropriate to apply agency principles in determining vicarious liability of an employer.  We have, for example, applied agency principles to determine the definition of an "employer" under the ADEA.  *See, e.g., Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A*., 104 F.3d 1256, 1266–67 (11th Cir. 1997); *Daughtrey v. Honeywell, Inc*., 3 F.3d 1488, 1495-96 (11th Cir. 1993).

*Sims*, 704 F.3d at 1336-37 (footnotes omitted).

> [24] The court stated that a reasonable juror could not conclude that the animus of the subordinate supervisor who made a recommendation to the decisionmaker to terminate the 71-year old plaintiff was the "but-for" cause of the termination.  The analysis was as follows:
>
>         First, [decisionmaker] Perkins testified that, because he had been aware for approximately five months that he could not indefinitely put off the RIF, he had been constantly evaluating the supervisors and their relative performance.  Second, he testified unequivocally that the decision was his own decision based on his own observations and evaluations.  In his opinion and based on his own personal observations, [plaintiff] Sims was at the bottom of the list of supervisors in terms of quality and accuracy of their work product.  Third, although he had consulted [subordinate supervisor] Davis in that they had been continually discussing the performance of all the supervisors, Perkins testified that Davis's opinion about Sims had been exactly the same as his own, thus merely confirming Perkins' own independent opinion.  Fourth, in the individual meetings where Perkins and Davis held with each of the eight supervisors, in which each was asked for a recommendation as to the two who should be included in the RIF, every supervisor except for Sims himself recommended that Sims should be one of the two who had to be laid off.  In sum, everyone whom Perkins consulted recommended that Sims be one of the two who had to be laid off – that is, everyone except Sims himself.  In light of Perkins' own five-month long evaluations, in light of Perkins' own independent judgment that Sims was at the bottom of the list

Applying the foregoing to this case, the court finds that plaintiff has not introduced any evidence to indicate that Davis's purported discriminatory animus in any way influenced Richmond in his decision to terminate Collins.  To the contrary, Richmond testified that he personally made the termination decision regarding plaintiff after seeing the way plaintiff had left his area the night before and also after reviewing plaintiff's personnel file, including his disciplinary write-ups.  (Doc. 19-7 at 136).  While Davis did inform Richmond of plaintiff's work conduct, unlike the subordinate supervisor in *Sims*, Davis did not make any recommendation to Richmond.  Davis testified that he "did not know anything about the termination until that morning," and also that he "didn't fire him.  Greg fired him. [He] didn't have the power to fire him."  (Doc. 19-4 at 24).  Davis also specifically testified that he did not make a recommendation to Richmond.  (*Id*.)  Because Richmond determined that plaintiff would be terminated based on his independent investigation of Davis's complaint and because Davis did not have the authority to terminate plaintiff, Davis's purported ageist comments cannot be considered direct or circumstantial evidence satisfying the "but-for" causation requirement on the ADEA claims.

### b.     Circumstantial Evidence

Alternatively, plaintiff argues that he "may proceed under the *McDonnell Douglas* framework."  (Doc. 23 at 24, n.6).  Proof of age discrimination by circumstantial evidence

---

on performance, and in light of the unanimous opinion of all persons consulted (except for Sims himself), we conclude that a reasonable juror could not find that Davis's animus was a "but-for" cause of Sims' termination.  It is clear that Davis's recommendation, even assuming arguendo it was tainted with some discriminatory animus, was not a "determinative influence" on Perkins' decision.  *See Gross*, 557 U.S. at 176, 129 S. Ct. at 2350.

*Sims*, 704 F.3d at 1337.

implicates the burden-shifting evidentiary framework articulated by the United States Supreme

Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248 (1981).  The Eleventh Circuit Court of Appeals has

recently addressed this issue, stating, in pertinent part:

> The ADEA prohibits employers from discharging an employee who is at
> least 40 years of age because of that employee's age.  29 U.S.C. §§ 623(a)(1),
> 631(a).  The ADEA provides, in relevant part, that "[i]t shall be unlawful for an
> employer ... to fail or refuse to hire or to discharge any individual or otherwise
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's age."  *Id. §*
> 623(a)(1).  In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176, 129 S. Ct.
> 2343, 2350, 174 L. Ed. 2d 119 (2009), the Supreme Court held that the language
> "because of" in the ADEA statute means that a plaintiff must prove that
> discrimination was the "but-for" cause of the adverse employment action.  *See id.*
> ("To establish a disparate-treatment claim under the plain language of the ADEA,
> therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's
> adverse decision."); *see also id.* (explaining that the claim "cannot succeed unless
> the employee's protected trait actually played a role in [the employer's
> decision-making] process and had a determinative influence on the outcome")
> (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706,
> 123 L. Ed. 2d 338 (1993)); W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser
> and Keeton on Law of Torts 265 (5th ed. 1984) ("An act or omission is not
> regarded as a cause of an event if the particular event would have occurred
> without it.").
>
> A plaintiff can establish age discrimination through either direct or
> circumstantial evidence.  *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201,
> 1204 (11th Cir. 2010).  Prior to *Gross*, we consistently evaluated ADEA claims
> based on circumstantial evidence of discrimination under the burden-shifting
> framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817,
> 36 L. Ed. 2d 668 (1973).  *See, e.g., Chapman v. AI Transp.*, 229 F.3d 1012, 1024
> (11th Cir. 2000) (en banc).  Under this framework, a plaintiff must first establish a
> prima facie case of discrimination.  *Id.* at 1024.  Next, the defendant must
> articulate a legitimate, non-discriminatory reason for the challenged employment
> action.  *Id.*  If the defendant articulates one or more such reasons, the plaintiff is
> afforded an opportunity to show that the employer's stated reason is a pretext for
> discrimination.  *See Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, ——,
> No. 11–16052, 2012 WL 6618360, at *2 (11th Cir. Dec. 20, 2012) (citing *Reeves
> v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106,

20

147 L. Ed. 2d 105 (2000); *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825).  The burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action.  *See Gross*, 557 U.S. at 176, 129 S. Ct. at 2350.

Following *Gross*, we have continued to evaluate ADEA claims based on circumstantial evidence under the *McDonnell Douglas* framework.  *See Kragor*, 702 F.3d at —, 2012 WL 6618360, at *2.  This is not only consistent with our pre-*Gross* case law, but also it is entirely consistent with *Gross*, which expressly left open the question of whether this application is appropriate.  *Gross*, 557 U.S. at 175 n. 2, 129 S. Ct. at 2349 n. 2 ("[T]he Court has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context.").  *Gross* held that it is improper to shift the burden of persuasion to the defendant in an age-discrimination case.  *Id.* at 173, 129 S. Ct. at 2348 ("[W]e must first determine whether the burden of persuasion ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA.  We hold that it does not." (footnote omitted)).  But the *McDonnell Douglas* framework does not shift the burden of persuasion to the defendant; instead, once the employee establishes a prima facie case of discrimination, the burden of production is shifted to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *See Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 1094-95, 67 L. Ed. 2d 207 (1981).  If the employer offers a legitimate, non-discriminatory reason, the employee is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination.  *See id.* at 256, 101 S. Ct. at 1095; *see also Kragor*, 702 F.3d at —, 2012 WL 6618360, at *2.  Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993) ("It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against remains at all times with the plaintiff.' ") (citation omitted); *see also Willis v. Conopco, Inc.*, 108 F.3d 282, 286 (11th Cir. 1997).

Our continued application of the *McDonnell Douglas* framework in ADEA cases is also consistent with all of our sister circuits that have addressed the issue.  *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012) (citing *Senske v. Sybase*, 588 F.3d 501, 506-07 (7th Cir. 2009)); *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir.

2010); *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *Smith v. City of Allentown*, 589 F.3d 684, 690-91 (3d Cir. 2009); *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 446-47 (1st Cir. 2009); *see also Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012) (continuing to apply *McDonnell Douglas* to ADEA cases without discussion of *Gross*), *cert. denied*, — U.S. —, 133 S. Ct. 313, 184 L. Ed. 2d 154 (2012).

Although our *Kragor* decision and our holding today reaffirm the use of the *McDonnell Douglas* framework in ADEA cases, this framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. *See Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Instead, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* A triable issue of fact exists "if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (footnote omitted) (internal quotation marks omitted).

*Sims*, 704 F.3d at 1331-33.

Thus, plaintiff may establish a prima facie case of age discrimination if he is able to show: (1) that he is a member of a protected class of persons between ages forty and seventy; (2) that he was subjected to an adverse employment action; (3) that a substantially younger person filled the position from which he was discharged; and (4) that he was qualified to do the job from which he was terminated. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Defendants do not argue that any of these four criteria are not satisfied. (*See* doc. 20 at 14-17). Defendants do argue that plaintiff has not identified a comparator, pointing "to record evidence that someone who was nearly identical to him disputed a rule violation and was treated better."[25] (*Id.* at 19). However, plaintiff is correct in asserting that he "need not identify a

---

[25]Defendants also argue that summary judgment is appropriate as to these claims because plaintiff cannot prove a prima facie case by showing "'that [ ]he belongs to a protected class and that [ ]he did not violate [his] employer's work rule.'" *Summers v. City of Dothan*, 444 Fed. App'x. 346, 349 n.1 (11th Cir. 2011) (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *superseded in part*, 151 F.3d 1321 (11th Cir. 1998)). Defendants argue further that plaintiff cannot defeat summary judgment simply by attempting to dispute defendants's evidence of disciplinary write-ups. *Id.*

comparator if he can show that he was replaced by an individual outside the protected class." (Doc. 23 at 24, n.6). *See Chapman*, 229 F.3d at 1024 ("One method a plaintiff can use to establish a *prima facie* case for an ADEA violation is by showing that he (1) was a member of the protected age group, (2) was subjected to an adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual.").

Plaintiff must present evidence that a substantially younger, although not necessarily under the age of forty, person filled the dishwasher position. *Turlington*, 135 F.3d at 1432; *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). The record shows that plaintiff was replaced by Marvin Farmer, who was in his late twenties. (Doc. 19-7 at 31, 147). Plaintiff, however, also must provide "'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *O'Connor*, 517 U.S. at 312 (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)). To make this inference, plaintiff's replacement cannot be insignificantly younger. *Id.* at 313. Plaintiff's replacement, being in his late twenties, certainly qualifies as significantly younger than plaintiff.

Additionally, there is evidence, when considered in a light most favorable to plaintiff that warrants the denial of summary judgment on this challenge. That evidence includes plaintiff's protestations that he was never provided notice of the disciplinary write-ups. Still further, he claims that he did not commit many of the purported infractions. While there is evidence to contradict plaintiffs' statements, such credibility choices are not for the court at this juncture. Accordingly, the motion is due to be denied as to this challenge to the disparate treatment (termination) claim.

23

c.    "But for" Cause

Defendants next argue that plaintiff has failed to show that his age was the "but for" cause for the adverse employment action.  (Doc. 20 at 18 of 30 (citing to *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167 (2009) and *Mora*)).  In *Gross*, the Supreme Court held that:

> [A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged employer action.  The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Gross*, 557 U.S. at 180.  Plaintiff does not present arguments or evidence showing that age was the but-for cause for the adverse employment action taken against him.  His only argument concerning *Gross* is that he may proceed under both the ADEA and the ADA.  (Doc. 23 at 24 n.7).

The court has already found that Davis's ageist comments cannot be the but-for cause for plaintiff's termination.  Additionally, there is no evidence that Richmond, who actually made the decision to terminate plaintiff (doc. 19-7 at 136), was influenced by Davis's comments.  To the contrary, as noted above, he made his own inquiry into the matter, including plaintiff's work history.  Plaintiff has failed to introduce any evidence that his age was the but-for cause for his termination by Richardson.  Accordingly, the motion for summary judgment is due to be granted as to the ADEA disparate treatment claim (Count One) on this basis.

2.    **Retaliation Under the ADEA (Count Three)**

The ADEA also contains an anti-retaliation provision, prohibiting employers from discriminating against an employee because that employee "has opposed any practice made

24

unlawful by [the ADEA], or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]."  29 U.S.C. § 623(d).  ADEA retaliation claim again is analyzed using the framework for Title VII claims -- under the *McDonnell Douglas* framework.  *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 n.6 (11th Cir. 2001).  *See also Stone v. Geico General Ins. Co.*, 279 Fed. App'x. 821, 822 (11th Cir. 2008) (citing *Chapman*, 229 F.3d at 1024).  Therefore, plaintiff must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  *Freeman v. City of Riverdale*, 330 Fed. App'x. 863, 867 (11th Cir. 2009) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).  *See also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-69 (2006) (requiring the "materially adverse" element).

### a.  Retaliatory Termination after Plaintiff's Complaints and EEOC Dismissal

Plaintiff's principal argument is that his termination was an act of retaliation following complaints and notice that his first EEOC complaint was dismissed on July 8, 2010.  (Doc. 23 at 24).

### i.  Statutorily Protected Conduct

Defendants argue that plaintiff's only statutorily protected conduct was the filing of his first EEOC charge.  (Doc. 20 at 19 of 30).  Defendants also argue that the decisionmaker (Richardson) was not aware of any of plaintiff's complaints, whether to the EEOC or "the former kitchen director."  (*Id.* at 20).

Two of plaintiff's complaints about Davis's ageist comments were to Greg Richmond, the decisionmaker who terminated plaintiff.  (*See* doc. 19-1 at 49–50).  "Statutorily protected activity includes complaining to superiors of harassment or discrimination and lodging complaints with the EEOC."  *Davis v. Dunn Const. Co., Inc.*, No. 2:10-cv-2075-RDP, 2012 WL 1952125 at *18 (N.D. Ala. May 24, 2012) (citing *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) and *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002) (finding that protected activity includes informally voiced complaints to superiors)).  Additionally, the record demonstrates that Richmond was aware of plaintiff's EEOC complaint about Davis's comments and conduct.  (Doc. 19-7 at 129-30 & Pl . Ex. 33 (Doc. 19-12 at 3 of 38).  Thus, this aspect of the motion is without merit because plaintiff did complain about Davis to Richmond.

### ii.       Plaintiff's Subjective and Objective Belief

Defendants next argue that plaintiff did not have a subjective or objective belief that the actions he complained about were unlawful (doc. 20 at 21 of 30).  This argument is premised on the following deposition testimony of plaintiff:

> Q.  And the things you say you complained about were Cornelius [Davis] making age comments?
>
> A.  Right.
>
> Q.  Do you have any reason to believe that making age comments is unlawful?
>
> A.  Well, it hurt my feelings.

(Doc. 19-1 at 51).  Also, in his deposition, plaintiff further testified:

> Q.  Do you have any reason to believe that Cornelius making comments like old guy violates the Age Discrimination and Employment Act? ...

26

A.  I don't know.

(*Id.* at 52).  Plaintiff can establish that he engaged in statutorily protected activity if he had "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (citing *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989)).  This does not require plaintiff to "'prove the underlying claim of discrimination which led to [his] protest,' but the plaintiff must have had a 'reasonable good faith belief' that he was discriminated against." *Davis*, 2012 WL 1952125 at *18 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1556 (11th Cir. 1997) (citations omitted)).  "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960.

To satisfy his burden under the subjective component, plaintiff must allege that his belief "was honest and *bona fide*." *Little*, 103 F.3d at 960.  While defendants argue that plaintiff's testimony proves a lack of a subjective belief by plaintiff, viewing the facts in the light most favorable to plaintiff, his multiple complaints to supervisors and the filing of an EEOC charge citing the same ageist-related behavior is evidence that he subjectively believed that defendants were engaged in unlawful employment practices.  His deposition testimony does not refute that finding.  The fact that he was unaware of the specific application of the ADEA is not dispositive in this instance.

Even accepting that plaintiff did subjectively believe that Davis's comments were unlawful, the court must also find that he is able to satisfy the objective component – that his

complaint was reasonable.  The standard that plaintiff must satisfy to prove that his belief was

objectively reasonable is that "'a reasonable employee would have found the challenged action

materially adverse, 'which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination.'"  *Burlington N. & Santa Fe Ry.*

*Corp.*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir.

2006) (internal quotation marks omitted)).  In analyzing whether a reasonable individual would

have believed that the employer was engaged in unlawful employment practices, "it is presumed

that the employee has a substantive knowledge of the law."  *Padilla v. North Broward Hosp.*

*Dist.*, 270 Fed. App'x. 966, 970 (11th Cir. 2008) (citing *Harper v. Blockbuster Entertainment*

*Corp.*, 139 F.3d 1385, 1388 n.2 (11th Cir. 1998) (failure to charge the employee who opposes an

employment practice with substantive knowledge of the law "would eviscerate the objective

component of our reasonableness inquiry")); *see also Clover v. Total Sys. Servs., Inc.*, 176 F.3d

1346, 1351 (11th Cir. 1999) ("[t]he objective reasonableness of an employee's belief that [his]

employer has engaged in an unlawful employment practice must be measured against existing

substantive law.").  Thus, "[w]here binding precedent squarely holds that particular conduct is

not an unlawful employment practice by the employer, and no decision of this Court or of the

Supreme Court has called that precedent into question or undermined its reasoning, an

employee's contrary belief that the practice is unlawful is unreasonable."  *Butler v. Alabama*

*Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (citing *Harper*, 139 F.3d at 1388–89);

*see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002).

        Defendants argue that plaintiff's three complaints between 2008 and 2010 do not qualify

as statutorily protected conduct because there is no recognized cause of action for a claim of

ADEA hostile environment, thus making plaintiff's belief objectively unreasonable.  (Doc. 20 at

21 of 30).  Plaintiff counters that "the Eleventh Circuit has affirmed a jury verdict for a plaintiff

on an ADEA hostile work environment claim."  (Doc. 23 at 27, n.9 (citing *EEOC v. Massey*

*Yardley Chrysler Plymouth*, 117 F.3d 1244, 1247-48 and nn. 2 & 4 (11th Cir. 1997)).

The Eleventh Circuit Court of Appeals has not determined whether a hostile work

environment is cognizable under the ADEA.  *Billingsley v. Centaur Building Services, Southeast,*

*Inc*., 2012 WL 5569155 (M.D. Ala. Sept. 6, 2012) (citing *Massey Yardley*, 117 F.3d 1244).  The

*Billingsley* court noted:

> Circuit courts are split on the issue; for example, the First Circuit has held that a
> hostile work environment claim is not cognizable under the ADEA, while the
> Fifth and Sixth Circuits have found that it is cognizable. FN2  *Compare Collazo v.*
> *Nicholson*, 535 F.3d 41, 44 (1st Cir. 2008), with *Dediol v. Best Chevrolet, Inc*.,
> 655 F.3d 435, 441 (5th Cir. 2011), and *Crawford v. Medina Gen. Hosp*., 96 F.3d
> 830, 834-35 (6th Cir. 1996). FN3

>> FN2. Similar to the Eleventh Circuit, the Seventh and Ninth
>> Circuits have taken cases on appeal that involve a hostile work
>> environment claim under the ADEA; however, they disposed of the
>> matter on other grounds without reaching the question of whether
>> the claim was viable or assumed *arguendo* that a claim existed.
>> *See i.e. Sischo-Nownejad v. Merced Cmty. Coll. Dist*., 934 F.2d
>> 1104, 1109 (9th Cir. 1991); *Young v. Will Cty. Dep't of Pub. Aid*,
>> 882 F.2d 290, 294 (7th Cir. 1989).

>> FN3. The Fifth and Sixth Circuits chose to allow the hostile work
>> environment claim under the ADEA because the U.S. Supreme
>> Court has held that "[t]he relevant language in the two statutes is
>> identical, and we have long recognized that our interpretations of
>> Title VII's language apply 'with equal force in the context of age
>> discrimination, for the substantive provisions of the ADEA were
>> derived *in haec verba* from Title VII.'"  *Gross v. FBL Fin.*
>> *Services, Inc*., 557 U.S. 167, 183, 129 S. Ct. 2343, 2354, 174 L.
>> Ed. 2d 119 (2009) (citing *Trans World Airlines, Inc. v. Thurston*,
>> 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)
>> (quoting *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S. Ct. 866, 55 L.

Ed. 2d 40 (1978))).

*Billingsley*, 2012 WL 5569155 at *4.  Plaintiff is correct, the Eleventh Circuit Court of Appeals has never held that a hostile work environment claim does not exist.  Thus, there is no binding precedent precluding such a claim.  Given this, the court finds it was objectively reasonable for plaintiff to believe that defendants engaged in unlawful employment practices by creating a hostile work environment.  Accordingly, summary judgment is due to be denied on this aspect of the ADEA retaliation claim.

To the extent defendants assert plaintiff's deposition testimony demonstrates he did not believe the conduct was unlawful – particularly under the ADEA, the court notes that "[t]o establish that a workplace constitutes a hostile work environment for purposes of the retaliation claim, plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (internal quotation marks and citation omitted).  United States Magistrate Judge Terry F. Moorer noted the relevant inquiry:

> The Supreme Court directs courts "to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' "*Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993)); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).  The Supreme Court defines this requirement to contain both an objective and a subjective component.  *Miller*, 277 F.3d at 1276.  To properly assert a claim, the harassing behavior must result in an environment "that a reasonable person would find hostile or abusive" as well as an environment that the victim "subjectively perceive[s] ... to be abusive." *Id.* (quoting *Harris v.*

30

*Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S. Ct. 367, 370–71, 126 L. Ed. 2d 295 (1993).

*Billingsley*, 2012 WL 5569155, at *5.

Considering plaintiff's testimony combined with the other testimony and evidence before the court, the undersigned finds that the record demonstrates the requisite severity or pervasiveness of the offensive comments for purposes of a retaliation claim.  While plaintiff did not testify as to how often Davis made such comments during the approximate three year period he was employed by the defendants, he did testify he complained three times during a thirty-three month period: September 2007 (doc. 19-1 at 48), September 2009 (*id*. at 50), and just before he was fired in July 2010 (*id*. at 50-51).  That alone is insufficient to establish a claim for a hostile work environment premised on age.  *See*, *e.g.*, *Brooks v. Hyundai Motor Manufacturing, Alabama, LLC,* 444 Fed. Appx. 385 (11th Cir. 2011) (holding that the alleged racial slurs were very few in number and plaintiff testified that they did not adversely affect her job performance).  However, the declaration of Tyrone Ball states that Davis regularly referred to Collins as an "old man," that "he was 'too old to keep up," and that he was "old and slow."  (Doc. 23-1 at 2 of 2).  Bell also stated that Davis "constantly stated he could fire people."  (*Id*.)  Finally, he noted that plaintiff did not respond as if these comments were a joke or laughing matter.  (*Id*.)  Plaintiff also testified that Davis said he was "going to get rid of [him]" a total of two or three times.[26]  (Doc. 19-1 at 55-56).  Accordingly, the motion is due to be denied as to plaintiff's ADEA retaliation claim.

---

[26] Plaintiff did not further specify the context or the date of these comments.  (Doc. 19-1 at 55-56).

### b.       Adverse Employment Action and Causal Relation

Defendants also argue that plaintiff has not shown an adverse employment action that is causally related to his complaint because plaintiff does not have the "right to sue" for his termination.  (Doc. 20 at 22 of 30).  However, as previously discussed, plaintiff does have a right to advance such a claim under the circumstances.

The next question raised by defendants is whether plaintiff's termination is causally related to his statutorily protected conduct – complaining about a hostile work environment.  To establish a causal connection, plaintiff "need only show 'that the protected activity and the adverse action were not wholly unrelated.'"  *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1354) (quoting *Simmons v. Camden Cty. Bd. Of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985), *cert. denied*, 474 U.S. 981 (1985)).  Plaintiff must at least generally establish that the employer was actually aware of the protected expression at the time of the adverse employment action.  *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *see also Simmons*, 757 F.2d at 1189.  Notably, a defendant's awareness of the protected expression "may be established by circumstantial evidence."  *Goldsmith*, 996 F.2d at 1163.

As already discussed, plaintiff complained of age discrimination three times between September 2008 and July 2010, when he was fired.  (Doc. 19-1 at 48–49).  His first complaint was to Mr. Richard, the kitchen director at the time.  (*Id.* at 49).  His final two complaints were to Greg Richmond, once in September 2009, and the final time "just before [he] got fired."  (*Id.* at 50–51).  Defendants acknowledge that "temporal proximity between this [third] complaint and his discharge would likely be sufficient for Collins to establish the third element of a prima facie case," but argue that it does not satisfy the third prong because plaintiff "failed to meet his

32

administrative prerequisites," which, defendants argue, "prevents him from making this claim at all." (Doc. 20 at 21). Again, this argument has been previously discussed and rejected. Because plaintiff has met his administrative prerequisites, the temporal proximity between his final complaint to Greg Richmond and his discharge satisfies the third element of his prima facie case. Accordingly, summary judgment is due to be denied as to plaintiff's retaliation claim as it relates to his termination.

### 2.    Retaliatory Disciplinary Write-ups

Plaintiff also argues that his disciplinary write-ups are retaliatory and constitute an independent claim for relief.[27] Plaintiff first complained sometime between 2008 and 2009 to "Richard." (Doc. 19-1 at 49). In 2008, plaintiff was written up twice. He specifically disputes the write-up for failing to clock out for breaks on January 17, 2008.[28] (*Id.* at 66-67). He does not argue that the other 2008 write-up were retaliatory because of his complaint to "Richard." Furthermore, it does not appear that "Richard" either signed or witnessed the write-up.[29] (See Doc. 19-11 at 33). Also, plaintiff has not presented any evidence that any other employee was even aware of his complaint to "Richard." Therefore, to the extent that plaintiff argues that any 2008 write-up is retaliatory, he has not demonstrated that Richmond had anything to do with

---

[27] Plaintiff's assertions regarding the retaliatory nature of his disciplinary write-ups are inconsistent. In his first EEOC charge, he testified, "I have received written warnings on a continuing basis for misconducts that I did not commit or others have committed." (Doc. 19-2 at 1). In his affidavit, plaintiff testified that the disciplinary write-ups were made up "[w]hen they found out they had the suit on them, then that's when they start [sic] writing up phony documents." (Doc. 19-1 at 70). However, shortly thereafter plaintiff testified, regarding the same allegedly made-up documents, that he could not remember if the reprimands were done because of his EEOC charge, asserting, "I never seen them [sic], so I don't know how – when they were made up." (*Id.* at 71).

[28] The associate counseling report itself states that plaintiff refused to sign. (Doc. 19-11 at 33).

[29] There is no testimony before the court showing that the illegible signature on the write-up is that of "Richard."

33

these being issued.

The only other possible retaliatory write-ups that plaintiff could assert are those that occurred after his first complaint to Richmond in September 2009.  (Doc. 19-1 at 50).  While plaintiff appears to argue that the August 2009 write-ups were retaliatory, these could not have been because plaintiff's testimony reveals that he did not complain to Richmond until September 2009.  (*See* doc. 23 at 9-10 ¶¶ 23-24).  Therefore, the only possible retaliatory write-ups plaintiff may argue are those occurring after September 2009.  This would include the following: October 9, 2009 - a final warning by Wilbanks for plaintiff having a drink in an inappropriate cup at his station; December 21, 2009 - a first warning by Wilbanks for plaintiff's failure to ask permission for a break and then taking a 38-minute break; and December 21, 2009 - a verbal warning by Wilbanks concerning plaintiff's alleged inappropriate comments to another supervisor.  (Doc. 19-11 at 37-39).  However,

> while the ADEA does refer to the availability of 'such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter,' 29 U.S.C. § 626(b), this Court has held that this provision is to be read in light of the reference to the remedies provided under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216 and 217, and that neither punitive damages nor compensatory damages for pain and suffering are recoverable under the ADEA.

*Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1446 (11th Cir. 1985) (citing *Dean v. American Security Insurance Co.*, 559 F.2d 1036, 1038 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066 (1978)).  Therefore, recovery is limited to back wages and fringe benefits for illegal conduct.  *Id.*  Plaintiff presents no evidence that any of the disciplinary write-ups themselves resulted in lost wages, loss of fringe benefits, or other compensable damages apart from the termination claim.  Thus, plaintiff cannot use the write-ups as a stand-alone retaliation claim

Because plaintiff has established a prima facie case as to retaliation concerning his termination, summary judgment is due to be denied as to the claim of retaliation under the ADEA as to that aspect of the claim.[30]  However, to the extent his retaliation claim is premised on disciplinary write-ups themselves, plaintiff has not proven a prima facie case.  Therefore, summary judgment is due to be granted as to any claim of retaliation premised simply on the write-ups.[31]

### D.    Refusal to Accommodate Under the ADA (Count Five)

Plaintiff next alleges that defendants violated the ADA when they failed to accommodate his disability in July 2010.  (See Complaint (doc. 1) at ¶¶ 22-27,  56- 63).  He specifically alleges that he "was a disabled individual under the terms of the ADA," but he "was qualified to perform the essential job functions of the position with a reasonable accommodation."  (Doc. 1 at ¶¶ 58-59).  He complains that he was discriminated against when defendants refused to accommodate him and then, ultimately, terminated him.  (*Id*. at ¶ 61).

Section 102(a) of the ADA prohibits "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  In order to establish a prima facie case of discrimination under the ADA, a plaintiff has the burden to show:

---

[30]  Defendants again rely on the argument that plaintiff cannot prove a prima facie case and do not address issues regarding burden shifting.  Because the evidence that defendants submitted containing legitimate, non-discriminatory reasons for plaintiff's adverse employment actions is disputed by plaintiff, there is a genuine issue of material fact.

[31]  Additionally, as previously noted, plaintiff has not shown a causal connection between Richmond and the initiation of the right-ups.

35

(1) that he is disabled; (2) that he is a qualified individual; and (3) that he was subjected to unlawful discrimination because of his disability. *Holly v. Clairson Industries, LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).  In the context of the ADA, the "term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Further, unlawful discrimination because of a disability includes

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business ....

42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.9(a).  Accordingly, an employer's failure to reasonably accommodate an employee's known disability itself constitutes unlawful discrimination under the ADA, so long as the employee is otherwise qualified, unless the employer can show undue hardship.  *Holly*, 492 F.3d at 1262.

To the extent that plaintiff is complaining about a failure to accommodate an alleged disability, defendants' argue that they were "not required to provide an accommodation that was not needed to enable Collins to do his job."  (Doc. 20 at 24 of 30).  They further state that Plaintiff testified that

> neither kidney failure nor dialysis kept Collins from performing any aspect (essential or inessential) of his job.  In fact, he performed the functions of his job at a level of "10 out of 10" without accommodation.  And, the allegedly requested accommodation had nothing to do with the performance of his job; it affected only his "off" days.  As a matter of fact, Collins needed no help doing his job....

(*Id*.)

While the ADA requires an employer to make "reasonable accommodations" for an

36

employee's known disability, "an employer is not required to accommodate an employee in any manner in which that employee desires." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)).  Rather, an "accommodation is 'reasonable' and necessary under the ADA ... only if it enables the employee to perform the essential functions of the job." *Holly*, 492 F.3d at 1256 (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259-60 (11th Cir. 2001); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998); 29 C.F.R. § 1630.2(o)(1)(ii)). Thus, a plaintiff "(1) as part of h[is] burden of production, must identify an accommodation that would allow h[im] to perform h[is] job duties and (2) as part of h[is] burden of proving h[is] case, must establish that such an accommodation is reasonable." *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997).  Moreover, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).  In other words, plaintiff must show that he actually demanded an accommodation of his disability from the employer and was refused.  *Gaston*, 167 F.3d at 1363-64; *Branscomb v. Secretary of Navy*, 461 Fed. App'x 901, 905 (11th Cir. 2012); *Knowles v. Sheriff*, 460 Fed. App'x 833, 835-36 (11th Cir. 2012); *see also Schwarz v. City of Treasure Isl.*, 544 F.3d 1201, 1219 (11th Cir. 2008) (stating "the duty to make a reasonable accommodation does not simply spring from the fact that the [plaintiff] wants such an accommodation made") (quoting *Prindable v. Association of Apt. Owners*, 304 F. Supp. 2d 1245, 1258 (D. Hawaii 2003)).

Plaintiff asserts that he needed a reasonable accommodation because on the days he had dialysis treatments before coming to work, he would feel very weak.  (Doc. 23-4 at ¶ 3).

37

According to plaintiff, the dialysis made it difficult for him to "stand for long periods of time, to walk each floor to collect the dirty dishes from the closets where they were stored, and to lift heavy stacks of dishes."  (*Id.*)  He also "need[ed] to take more breaks or longer breaks than [he] was allowed" after the morning treatments.  (*Id.*)

> With regard to accommodations, the Eleventh Circuit has stated:

> The ADA lists as examples of reasonable accommodations "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *see* 29 C.F.R. § 1630.2(o)(2)(ii).  As the list indicates, the ADA may require the employer to "reassign," *i.e.*, transfer, the disabled employee to a vacant position as a reasonable accommodation.  The reassignment duty, however, does not require the employer to bump another employee from a position in order to accommodate a disabled employee.  *See Willis*, 108 F.3d at 284.  Nor does it require the employer to promote a disabled employee.

*Lucas*, 257 F.3d at 1256 (further citation omitted).  Plaintiff claims that defendants failed to change his schedule and that doing so would have allowed him to perform the essential functions of the job.  In response, defendants state there is no record evidence demonstrating the truth of these assertions or that either defendant knew that he requested or was denied occasional breaks. (Doc. 24 at 10 of 11).  "[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."  *Gaston*, 167 F.3d at 1363.  Although the Eleventh Circuit has not "determined precisely what form the request [for reasonable accommodation] must take," *Holly*, 492 F.3d at 1261 n.14, that court has indicated that "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [employer] to

38

make appropriate inquiries about the possible need for an accommodation,'" *United States v. Hialeah Hous. Auth.*, 418 Fed. App'x 872, 876 (11th Cir. 2011) (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010) (quotation marks omitted)); *see also Salser v. Clarke County Sch. Dist.*, 802 F. Supp. 2d 1339, 1355-56 (M.D. Ga. 2011).

At least insofar as plaintiff's discrimination claim pertains to any request for needed occasional breaks, the motion is due to be granted.  There is no evidence that plaintiff made such a request to anyone.  To the extent he requested that his days off be changed, the evidence is clear he made such a request of Davis in July 2010.[32]  (Doc. 19-1 at 97).  According to plaintiff,  Davis responded, "well, I can replace you – you can have it off permanent, I can replace you with a younger guy;" and he was never afforded a revised schedule.  Thus, plaintiff has set forth enough evidence to overcome defendants' motion for summary judgment on the ADA discrimination claim concerning a failure to provide a modified schedule.[33]

Concerning the termination aspect of the ADA discrimination claim (Count Five), including that he was replaced by a "non-disabled individual," defendants do not offer any challenge.  Accordingly, summary judgment is due to be denied as to this aspect of the claim.

**E.**    **Retaliation Under the ADA**

The ADA also prohibits acts of retaliation, requiring that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."  42 U.S.C. § 12203(a).  This prohibition is similar to the prohibition under Title

---

[32] It is undisputed that Davis was in charge of scheduling at that time.

[33] Defendants also argue that plaintiff did not exhaust his administrative remedies, relying on the fact that plaintiff asserted the denial of his accommodation in the first EEOC charge and not the second.  (Doc. 20 at 24–25). However, this argument fails for the same reasoning as was discussed above in section III. B. herein.

VII, so "we assess ADA retaliation claims under the same framework [employed] for retaliation claims arising under Title VII." *Diaz v. Transatlantic Bank*, 367 Fed. App'x. 93, 97-98 (11th Cir. 2010) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (citations omitted)); *see also Gilliard v. Georgia Dept. of Corrections*, 2012 WL 6115913, *2 (11th Cir. December 7, 2012) ("Where a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's retaliatory intent, we apply the burden-shifting framework for evaluating discrimination claims under Title VII").  To establish a prima facie case of ADA retaliation, plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected expression.  *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

### 1.    Statutorily Protected Expression

Defendants' argue that plaintiff cannot establish a prima facie case of ADA retaliation because the only statutorily protected expression was plaintiff's filing of his first EEOC charge. (Doc. 20 at 19).  They also assert plaintiff has not shown that any decisionmaker was aware of his engaging in statutorily protected conduct.  (*Id*. at 20).  More generally, defendants argue that the "record evidence simply does not establish the first prima facie element of a retaliation claim."  (*Id.* at 21).  In response, plaintiff asserts that he was engaging in statutorily protected activity when he requested his reasonable accommodation under the ADA.[34]  (Doc. 23 at 25).

A plaintiff engages in statutorily protected activity in requesting an ADA accommodation

---

[34] Plaintiff first relies on the purported direct evidence of discrimination concerning Davis.  Because the court has found that Davis's comments were not direct evidence, the claim is evaluated via circumstantial evidence considerations.

if he "had a good faith, objectively reasonable belief that he was entitled to those accommodations under the ADA." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); *see also Harper*, 139 F.3d at 1388 (quoting *Little*, 103 F.3d at 960). The analysis is the same here as in the ADEA retaliation claim discussed above. It requires a showing of a subjective and an objective component. *See Little*, 103 F.3d at 960.

Defendants do not specifically argue why plaintiff's request for an accommodation fails under either the subjective or objective prong. However, as already stated, the record demonstrates his requests were reasonable in view of fact that after his dialysis he was weak and incapable of fulfilling his job responsibilities. Therefore, plaintiff's request for accommodation of his schedule was both subjectively and objectively reasonable, and is statutorily protected conduct.

### 2.    Adverse Employment Action and Causal Connection

Defendants next argue that there is no adverse employment action for which plaintiff is able to sue. However, under the reasoning explained above, plaintiff has the right to sue for his termination, thereby satisfying the requirement that there must be an adverse employment action.

The next disputed element is whether there is a causal connection between the statutorily protected conduct and the adverse employment action. Defendants argue that there is no causal connection between plaintiff's statutorily protected expression and the adverse employment actions other than the termination by Richmond. (See Doc. 20 at 21-22 ("other than his termination (for which Collins no longer has the right to sue ...), Collins can point to no adverse employment action that could be causally related to any complaint."). Plaintiff responds that he produced direct and indirect evidence that his requests for reasonable accommodation were a

41

motivating factor in his termination.  (Doc. 23 at 24).

   For plaintiff to establish a causal connection, he must show that the decisionmaker was aware of the protected conduct and that the protected activity and the adverse action are not wholly unrelated.  *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal citation omitted).  "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated."  *Id.* at 716–17 (quotation marks omitted).  "Showing that an adverse employment action happens within one month of the protected activity satisfies the causation requirement for summary judgment purposes."  *Summers v. City of Dothan, Ala.*, 444 Fed. App'x. 346, 351 (11th Cir. 2011) (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601-02 (11th Cir. 1986)).  Plaintiff has shown that the decisionmaker, Greg Richmond, was aware that he had sought an acommodation.  In his deposition, Richmond testified that he was aware of plaintiff's dialysis, (doc. 19-7 at 55) and he also knew that plaintiff had requested work scheduling around that dialysis.  (*Id.* at 56).

   With that established, the next element is to see if the protected activity and the adverse employment action are not wholly unrelated.  Plaintiff asserts that he requested a reasonable accommodation in March 2009, and again in July 2010.[35]  (Doc. 19-1 at 26, 97–8).  Plaintiff was terminated on July 29, 2010, thereby satisfying temporal proximity and proving a prima facie case as to this claim.[36]  Consequently, summary judgment is due to be denied as to plaintiff's

---

   [35] As previously noted, the date of this request to Davis is referenced to have occurred in July 2009, (doc. 19-1 at 59–60) at one point in plaintiff's deposition, and July 2010 at another.  (*Id.* at 97–8).

   [36] Defendants argue, "[o]ther than his termination (for which Collins no longer has the right to sue under the ADEA or the ADA), Collins can point to no adverse employment action that could be causally related to any complaint."  (Doc. 20 at 22).  However, as explained above, plaintiff is not limited to his first EEOC charge.

claim of retaliation under the ADA.

**F.     Interference and Retaliation Under the FMLA**

Plaintiff concedes that he did not meet the 1,250-hour threshold for FMLA coverage in July 2010, and, therefore, does not oppose the granting of summary judgment as to these claims. (Doc. 23 at 33).  Accordingly, summary judgment is due to be granted as to the FMLA interference and retaliation claims.

**IV.   RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

Based on the foregoing, the undersigned hereby **RECOMMENDS** that the defendants' motion for summary judgment (doc. 18) be granted in part and denied in part.  Summary judgment is due to be granted as to plaintiff's ADEA discrimination claim (count 1); AADEA discrimination claim (count 2); ADEA retaliation claim as it pertains to plaintiff's alleged retaliatory write-ups in count 3; AADEA retaliation claim (count 4); FMLA interference claim (count 7); and, FMLA retaliation claim (count 8).  Summary judgment is due to be denied as to plaintiff's ADEA retaliation claim to the extent it is premised on his termination (count 3); ADA discrimination claim as it pertains to his work schedule and termination (count 5); and, ADA retaliation claim (count 6).

Any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the

specific basis for the objection.  A copy of any objection must be served upon all other parties to the action.

      **DONE**, this 14th day of June, 2013.

 

**JOHN E. OTT**
Chief United States Magistrate Judge